# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Joseph Alan James,<br><br>    Defendant. | Case No. 15-cr-255 (SRN)<br><br><br><br>**ORDER** |

Bradley Endicott, United States Attorney's Office, 316 N. Robert St., 404 U.S. Courthouse, Saint Paul, MN 55101, for the Government

Joseph Alan James, Reg. No. 18799-041, FMC-Lexington, P.O. Box 14500, Lexington, KY 40512, Pro Se Defendant

SUSAN RICHARD NELSON, United States District Judge

   This matter is before the Court on Defendant Joseph Alan James' Pro Se Motion for Release [Doc. No. 60].  The Government filed a response in opposition to James' Motion for Release.  (Gov't's Opp'n [Doc. No. 62].) Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motion.

## I. BACKGROUND

### A.  Procedural and Factual Background

   In 2015, the Government charged James with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2), with respect to seven firearms. (Information [Doc. No. 8].)  In October 2015, James pleaded guilty pursuant to a plea

agreement (the "Plea Agreement").  As noted in the Plea Agreement, James used one of the firearms to shoot an outdoor automated teller machine.  (Plea Agmt. ¶ 2(a).)  On March 25, 2016, the Court sentenced James to a 78-month term of imprisonment.  (*See* Sentencing Minutes [Doc. No. 29].)

James is incarcerated at FMC-Lexington, in Lexington, Kentucky.  He has a projected release date of January 19, 2021.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed Apr. 21, 2020).

### B.  Parties' Arguments

In James' motion, he asserts that in light of the risks associated with the COVID-19 pandemic, he is eligible for release pursuant to the CARES Act.  (Def.'s Mot. at 1–2.)  He asks that the Court permit him to serve the rest of his sentence through home confinement.  (*Id.* at 1–3.)  Specifically, he proposes living with his elderly parents, which would also allow him to assist them with meeting their basic needs.  (*Id.* at 2–3.)

In opposition, the Government contends that the CARES Act, the First Step Act, and the Second Chance Act do not authorize judicial review of the BOP's placement determinations.  (Gov't's Opp'n at 2–6.)  Furthermore, to the extent that James' motion is construed as a request for compassionate release under 18 U.S.C. § 3582(c), the Government asserts that James has failed to exhaust his administrative remedies prior to seeking relief from the Court.  (*Id.*  at 7–9.)  Moreover, the Government maintains that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities.  (*Id.* at 9–10.)

## II.    DISCUSSION

The First Step Act, Pub. L. No. 115-391, was enacted in December 2018, with the goal of reducing federal inmates' recidivism rates.  As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007, *see* 18 U.S.C. § 3624(c)(1).  For instance, amendments to the First Step Act made home confinement potentially available to low-risk prisoners:

> Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. *The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph*.

18 U.S.C. § 3624(c)(2) (First Step Act amendment in italics).  As the statute provides, authority for the placement of prisoners rests with the BOP.  (*Id.*) (stating, "The Bureau of Prisons shall, to the extent practicable, . . . .").

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act, Pub. L. No. 116-136, to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations.  The BOP began reviewing all inmates who have COVID-19 risk factors, starting with inmates incarcerated at prisons that have experienced COVID-19 cases (FCI-Oakdale, FCI-Danbury, FCI-Elkton) and similarly-situated facilities to determine which inmates are suitable candidates for home confinement.   BOP Update on COVID-19 & Home Confinement,

https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp   (last accessed Apr. 21, 2020).

As noted above, the BOP has exclusive authority to determine the placement of prisoners.  *See* 18 U.S.C. § 3624(c)(2).  The First Step Act, CARES Act, and Second Chance Act merely give eligible inmates the possibility to be considered for home confinement or halfway house placement.  *See United States v. Kluge*, No. 17-cr-61 (DWF), 2020 WL 209287 at *3 (D. Minn. Jan 14, 2020) ("Nothing in the statutes amended by the FSA permits the Court to place Defendant in home confinement. Under the FSA, the authority to place a prisoner remains with the BOP."); *see also Xiao v. La Tuna Fed. Corr. Inst.*, No. EP-19-CV-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation  the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement."); *Ward v. Bureau of Prisons*, No. 3:19-CV-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019) (observing that First Step Act and Second Chance Act govern the BOP's discretion to place inmates in particular facilities, including home confinement), report and recommendation adopted, No. 3:19-CV-0770-D, 2019 WL 1924903  (N.D. Tex. Apr. 30, 2019).

Although the First Step Act expanded release opportunities, courts have observed that "it is BOP—not the courts—who decides whether home detention is  appropriate. . . . Rather than mandate any particular home confinement  decision, Congress instead directed BOP to place prisoners on home confinement 'to the extent practicable.'" *United States v. Yates*, No. 15-40063-01-DDC, 2019 WL 1779773, *4 (D. Kan. Apr. 23, 2019); *see also United States v. Burkhart,* No. 6: 03-036-DCR, 2019 WL 615354, *2 (E.D. Ky. Feb. 13,

4

2019) (stating that the First Step Act "did not modify the requirement that the Bureau of Prisons, not the Court, make the decision to place a prisoner on home confinement or in a residential re-entry center.").

It is also well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement. *Khdeer v. Paul*, No. 18-CV-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018) ("Petitioner does not have a constitutionally protected liberty interest in serving his sentence at a particular institution.") (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (stating the "Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison"); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) (stating "there is no liberty interest in assignment to any particular prison")), report and recommendation adopted, 2019 WL 79318 (D. Minn. Jan. 2, 2019). Home confinement is a place of confinement. *See* 18 U.S.C. § 3624(c).

For all of these reasons, the Court lacks jurisdiction to grant James' motion under the First Step Act, Second Chance Act, or CARES Act.

Although James does not invoke 18 U.S.C. § 3582(c) as a basis for relief, he does not appear to have exhausted his administrative remedies in this regard, and is therefore not eligible for relief under the statute. *See* § 3582(c)(1)(A) (stating that courts may consider a motion for release only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."). The Court cannot consider a motion for

compassionate release for which the prisoner has not first sought relief from the BOP. *See, e.g., United States v. Bergren*, No. 00-cr-375 (DWF/RLE), 2020 WL 1910585, at *1 (D. Minn. Apr. 20, 2020) (denying motion for compassionate release due to COVID-19 for failure to exhaust and on the merits); *United States v. Jenkins*, 4:15-CR-3079, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020) ("Simply put, the Court cannot consider a motion for compassionate release that is based on evidence or arguments that weren't presented to the Bureau of Prisons first."); *United States v. Annis*, 16-cr-1951 (JRT/KMM), 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020) (finding the court had no authority to grant compassionate release due to COVID-19 pursuant to 18 U.S.C. § 3582(c)(1)(A) because the defendant had not exhausted his administrative remedies).

Even if the Court had authority to entertain James' request, release under these facts is not warranted. James, who is 34 years old, does not identify any health condition that places him at greater risk of harm from COVID-19, nor are there any cases of the virus in FMC-Lexington, as of this writing. BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last accessed Apr. 21, 2020). Since January 2020, the BOP has been preparing to mitigate the effects of a potential COVID-19 outbreak. BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accessed Apr. 21, 2020). Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and

(6) modifying operations to maximize social distancing and to limit group gatherings.  BOP

Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed

Apr. 21, 2020).  These efforts appear to have been successful at the majority of federal

prisons, and as of this writing, at FMC-Lexington.

While the Court understands James' concerns about his health and safety, his

Motion for Release is denied for all of the reasons stated above.

### III.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendant's Pro Se Motion for Release [Doc. No. 60] is **DENIED**.


Dated: April 21, 2020

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge