# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Joseph Alan James,<br><br>Defendant. | Case No. 15-cr-00255 (SRN)<br><br><br><br>**ORDER** |

Bradley M. Endicott, DOJ-USAO, 316 N. Robert St., 404 U.S. Courthouse, Saint Paul MN 55101, for the Government

Andrew H. Mohring, Office of the Federal Defender, 300 S. 4th St., 107 U.S. Courthouse, Minneapolis, MN, 55415, for the Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Joseph Alan James' Motions for Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (("Motions for Release") [Doc. Nos. 64, 65, 76]). Mr. James seeks compassionate release and requests that the Court reduce his prison sentence to a supervised release term due to the dangers posed by COVID-19. The Government filed a response in opposition to Mr. James' Motions for Release. (Gov't's Opp'n [Doc. No. 77]).

Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Defendant's motions.

## I.     BACKGROUND

### A.     Procedural and Factual Background

In October 2015, Joseph Alan James plead guilty to a felon in possession charge. (Plea Agmt. [Doc. No. 14] at 1-2.) On March 25, 2016, the Court sentenced Mr. James to a 78-month term of imprisonment, and he is currently incarcerated at FMC-Lexington in Kentucky. (Sentencing J. [Doc. No. 30]); BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed July 1, 2020). He has a projected release date of January 19, 2021, but is eligible for community placement on or after July 19, 2020. (*Id.*; Def.'s Ex. [Doc. No. 73] at 142.)

Initially, on April 9, 2020, Mr. James filed a pro se motion seeking transfer to home confinement under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). [Doc. No. 60.] The Court denied his motion, finding, in part, that the Court lacked authority to grant a transfer to home confinement under the CARES Act. (Order, Apr. 21, 2020 [Doc. No. 63] at 4-6.) Additionally, to the extent that he was seeking relief under 18 U.S.C. § 3582(c)(1)(A), the Court found Mr. James was ineligible for compassionate release because he did not exhaust his administrative remedies. (*Id.*) Thereafter, on April 23, 2020, the Bureau of Prisons ("BOP") denied a request by Mr. James for compassionate release. ([Doc. No. 69] at 1.)

**B.     Parties' Arguments**

Mr. James seeks release or home confinement in light of the risks associated with the COVID-19 pandemic. (Def.'s Mem. in Supp. Of Mot. for Compassionate Release [Doc. No. 70] ("Def.'s Mem.") at 4.)  He argues that his mental health and preexisting health issues make him uniquely susceptible to COVID-19.  Specifically, he alleges that he suffers from bi-polar disorder, psychosis, major depressive disorder, general anxiety disorder, insomnia, a vitamin B-12 deficiency, restless leg syndrome, and sleep apnea. (Def.'s Mem. at 4.)  He also asserts that his necessary drug therapies create a high likelihood that he has a compromised immune system.  (*Id*. at 18.)  As a result, he argues that he is especially vulnerable to COVID-19 exposure.  (*Id*. at 18-19.)  Moreover, he argues that COVID-19 has taken root at FMC-Lexington, compounding his risk of contracting the virus.  (*Id*. at 7, 17.)

In opposition, the Government argues that Mr. James' motion should be denied for three reasons.  First, it argues that he has failed to demonstrate that he has exhausted his administrative remedies or alternatively that he failed to wait 30 days from the warden's receipt of a request for release before seeking judicial intervention.  (Gov't's Opp'n at 11-21.)  As a result, the Government asserts that the Court lacks jurisdiction.  (*Id*.)  Second, the Government contends that even if Mr. James meets the administrative exhaustion requirement, his motion fails on the merits. (*Id.* at 21-24.)  Third, the Government contends that he has not met his burden to show that a reduction is warranted in light of the danger that he would pose to the community. (*Id.* at 24-25.)  Finally, the Government asserts that the BOP's current transitional plan for Mr. James "would present a far more narrowly

3

tailored alternative" to his needs, because he will likely be placed in an approved halfway house in late July 2020 that will allow him the "opportunity to transition to home living" and "ready access to providers" that will help him establish a mental health release plan. (*Id.* at 26; Compassionate Release Investigation Report [Doc. No. 69].)

## II.   DISCUSSION

### A.   The Law

A court may not modify a term of imprisonment once it has been imposed except pursuant to statute. *United States v. Kachina*, No. 15-cr-68 (ADM/FLN), 2020 WL 2539270, at *1 (D. Minn. May 19, 2020) (citing 18 U.S.C. § 3582(c)); *see also McIndoo*, 2020 WL 2201970, at *2. The compassionate release provision, as amended by the First Step Act, is such a statutory exception. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act[1] amended this provision with the goal of increasing "the use and transparency of compassionate release" and the section now allows defendants, for the first time, to petition district courts directly for compassionate release. *United States v. Stephenson*, No. 3:05-cr-511, 2020 WL 2566760, at *2 (S.D. Iowa May 21, 2020). Under the old regime, defendants could petition only the BOP Director, who could then make a motion, at his or her discretion, to the district court. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13 cmt. n.4 (U.S. Sentencing Comm'n 2018). The amended provision provides as follows:

---

[1] The First Step Act also amended other provisions of the U.S. Code with the goal of "promot[ing] rehabilitation of prisoners and unwind[ing] decades of mass incarceration." *Stephenson*, 2020 WL 2566760, at *2 (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)).

4

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A).

While the statute does not define "extraordinary and compelling reasons," Congress authorized the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission enumerates several "extraordinary and compelling reasons" justifying a reduction of sentence, including the "medical condition of the defendant," the defendant's "age" and "family circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C).

As relevant here, a defendant's medical condition, in narrow circumstances, may form the basis for a reduction in sentence under the Commission's policy statement. *See id*. The policy statement provides that a reduction is warranted if the defendant is suffering from either (1) a "terminal illness" or (2) a serious physical or mental condition "that substantially diminishes" the ability of the defendant to provide self-care and "from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Cmt. 1(A). The policy statement

5

also provides a catch-all provision, allowing courts to consider "other extraordinary and compelling reasons that exist either separately or in combination with previously described categories." [2]  *United States v. Walker*, No. 16-cr-33(1) (DWF/LIB), 2020 WL 2490101, at *3 (D. Minn. May 14, 2020) (citing U.S.S.G. § 1B1.13)).

To apply the Commission's guidance above, in conjunction with the amended statutory directive in 18 U.S.C. § 3582(c)(1)(A), numerous district courts, including in this district, have found that the following three issues must be considered in evaluating a compassionate release application: (1) whether "extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's policy statement"; (2) whether the sentencing factors under § 3553(a), "to the extent they are applicable," weigh in favor of a sentence reduction; and (3) whether the "prisoner is a danger to the safety of any other person or to the community." *United States v. White*, No. 13-cr-20653, 2020 WL 2557077, at *4-5 (E.D. Mich. May 20, 2020) (quoting *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *2 (E.D.N.Y. July 30, 2019)

---

[2]  Although the policy language only allows the Director of the BOP to identify other grounds that amount to "extraordinary and compelling reasons," the Court agrees with numerous district courts, including in this Circuit, that have interpreted this provision to allow courts, in addition to the Director, the discretion to consider other relevant factors. *See United States v. Ramirez*, No. 17-cr-10328 (WGY), 2020 WL 2404858, at *2-3 (D. Mass. May 12, 2020) (collecting cases and finding that courts have "the authority to consider other relevant factors" because such an interpretation "best comports with the First Step Act."); *see also United States v. Brown*, -- F. Supp. 3d--, 2020 WL 2091802, at *5-7 (S.D. Iowa Apr. 29, 2020) (finding that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it.").

(citing *United States v. Bellamy*, 2019 WL 3340699, at *2 (D. Minn. July 25, 2019) (further citations omitted)).

As the movant, Defendant carries the "burden to show he is entitled to a sentence reduction." *United States v. Estabrook*, No. 10-cr-109, 2020 WL 2544422, at *4 (D.N.D. May 19, 2020) (finding burden is on the defendant to establish that a sentence reduction is warranted under 18 U.S.C § 3553(c)(2)) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)); *see also United States v. Morrison*, 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020) ("[t]he defendant has the burden to show he is entitled to a sentence reduction.") (internal quotation and citation omitted)); *United States v. Cabrera*, 2020 WL 2549941, at *2 (C.D. Ill. May 19, 2020) (same) (internal quotation omitted)).

### B. Analysis

#### 1. Exhaustion of Administrative Remedies

The Court first considers whether it has the authority to grant Defendant's motions. As explained above, by its plain language, the compassionate release statute provides that a court may only reduce a defendant's sentence after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, to be entitled to relief pursuant to § 3582(c)(1)(A), a defendant generally must exhaust administrative remedies or wait 30 days from the warden's receipt of a request for release, as a precondition to seeking judicial intervention.

The Government argues that Mr. James has not made an administrative compassionate release request because, "based on conversations with the BOP," he has only presented a request for "home confinement," rather than a request for compassionate release to the warden. (Gov't's Opp'n at 17.) Because it maintains that the "BOP's home confinement review is separate and apart from a request for compassionate release," it argues that he has failed to satisfy, at minimum, the statute's 30-day period to afford the BOP initial review of his request. (*Id.*)

Mr. James, however, argues to the contrary in his motion. (Def.'s Reply [Doc. No. 78] at 3.) He points to the probation office's compassionate-release-plan investigation, which concluded in relevant part:

> On April 23, 2020, the Bureau of Prisons (BOP) denied his request for compassionate release based on his concerns regarding COVID 19.

([Doc. No. 69] at 1.) He therefore contends that, while the "precise" language used in his administrative request has not been produced by the BOP or the government, (Def.'s Reply at 3), the probation office construed the BOP's response to have "denied his request for compassionate release." (*Id.*) Moreover, he argues that the Government did not object to the finding of the probation office that the BOP denied his request for "compassionate release" on April 23, 2020. (*Id.* at 4.) And, in light of Mr. James' severe mental illness and "lack of sophistication," his administrative request should be construed broadly, rather than strictly "as though he were a trained lawyer." (*Id.*)

The Court agrees with Mr. James, and finds that more than 30 days have lapsed from the receipt of his request for compassionate release by the warden, which is all the

8

statute appears to require before he can proceed in district court. 18 U.S.C. § 3582(c)(1)(A). Although the precise language used by Mr. James in his administrative request is not before the Court, the probation office construed the BOP's response as a denial for a "request" for "compassionate release" on April 23, 2020. ([Doc. No. 69] at 1.) Presumably, this "request" was submitted by Mr. James before the BOP's April 23 denial. Thus, the BOP has been afforded more than 30 days to review Mr. James' administrative request for compassionate release, therefore "satisfying the terms of the statute." *See*, *e.g.*, *United States v. Olejniczak*, No. 15-cr-142 (EAW), 2020 WL 2846591, at *3 (W.D.N.Y. June 2, 2020) (ruling on the merits of a compassionate release motion because thirty days elapsed from the warden's receipt of defendant's administrative request for compassionate release). Because Mr. James appears to have exhausted his administrative remedies in this regard, the Court may therefore turn to the merits of his motion.

### 2. Compassionate Release Under § 3582(c)(1)(A)

The Court next considers whether release under these facts is warranted. As explained above, the Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling" reasons under § 3582(c)(1)(A), and provides that an inmate's medical conditions can, alone, prove sufficiently extraordinary and compelling to justify a sentence modification. *See* U.S.S.G. § 1B1.13 at cmt. n.1(A) (noting that the medical condition(s) must be "serious and advanced . . . with an end of life trajectory" or serious enough that they "substantially diminish the ability of the inmate to provide self-care" within the facility and "from which he or she is not expected to cover.").

9

Alternatively, an inmate's serious medical condition "in combination with" additional reasons may justify compassionate release. *See* U.S.S.G. § 1B1.13 at cmt. n. 1 (A)-(D).

Mr. James argues that the COVID-19 pandemic, in combination with his medical conditions, warrants compassionate release. Although the Court does not intend to diminish the risk of COVID-19 in the federal prison system, the Court agrees with the findings of several courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A). *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citing *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also Raia*, 954 F.3d at 957 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Rather, district courts require, in the context of the general danger presented by COVID-19, that an inmate demonstrate both "a particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (collecting cases); *Ramirez*, 2020 WL 2404858, at *3; *United States v. Shamilov*, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2020).

Against these standards, Mr. James fails to present extraordinary and compelling reasons for his release. Mr. James, who is 34 years of age, is not at an age that is particularly susceptible to an increased risk of COVID-19 complications. CDC, Coronavirus Disease 2019: People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-

10

risk.html (last accessed July 1, 2020). Nonetheless, he asserts that he has several medical conditions that make him more vulnerable to becoming seriously ill should he contract COVID-19. (Def.'s Mem. at 4.)

The Court disagrees. While it appears that he suffers from significant mental health disorders and certain physical ailments such as a Vitamin B-12 deficiency and sleep apnea, none of these conditions have been identified by the Centers for Disease Control and Prevention ("CDC") as specifically increasing the risk of developing serious illness from COVID-19. *See, e.g., United States v. Zigler*, No. 11-cr-304 (SRN/JSM), 2020 U.S. Dist. LEXIS 112384, at *16 (D. Minn. June 26, 2020) (denying compassionate release, in part, because sleep apnea has not been identified by the CDC as specifically increasing the risk for developing serious illness from COVID-19); *United States v. Poncedeleon*, No. 18-cr-6094 (FPG), 2020 WL 3316107, at *2 (W.D.N.Y. June 18, 2020) (denying compassionate release, in part, because inmate's medical condition, which included bipolar disorder, anxiety, and depression, "are not believed to present a higher risk of complications"); *United States v. Ayers*, No. 08-cr-364 (JDB), 2020 WL 2838610, at *2 (D.D.C. June 1, 2020) (denying compassionate release, in part, because a Vitamin B-12 deficiency does not rise to the level of extraordinary and compelling reasons warranting release); *United States v. Polnitz*, No. 17-cv-201 (PP), 2020 WL 3129643, at *2 (E.D. Wis. May 12, 2020) (denying compassionate release, in part, because mental disorders such as depression and schizophrenia are not the type of conditions that raise concerns for increased risk of severe COVID-19 illness).

As for whether Mr. James has a heightened risk of contracting the virus based on the conditions at FMC-Lexington, the Government expressly acknowledges that he is being held at a facility where a notable outbreak has occurred. Nonetheless, the Court agrees with the findings of other courts that this risk alone is insufficient to automatically warrant compassionate release. *See, e.g., United States v. Hazam*, No. 18-cr-30029, 2020 WL 3265349, at *3 (C.D. Ill. June 17, 2020) (denying compassionate release for inmate confined at FMC-Lexington due, in part, to the "rigorous procedures" the BOP has implemented to mitigate the spread of the virus); *United States v. Doumas*, No. 13-cr-120 (JMA), 2020 WL 3256734, at *2 (E.D.N.Y. June 16, 2020) (same); *United States v. Brady*, No. 18-cr-316 (PAC), 2020 WL 2512100, at *4 (S.D.N.Y. May 15, 2020) (denying compassionate release for inmate at FMC-Lexington because, in part, he would face "no less considerable risk of infection endured by the general public") (citation omitted).

The Court therefore finds that Mr. James' medical conditions do not warrant compassionate release. In fact, his medical conditions appear to be appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates from and treat inmates who have contracted COVID-19.[3] Additionally, the Court agrees with the Government and finds that the BOP's current transitional plan for Mr. James is better suited

---

[3] Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. BOP Modified Operations, https://www.bop.gov/coronavirus/covid19 status.jsp (last accessed July 1, 2020).

to address any potential threat of COVID-19 and his medical needs.  Indeed, in less than a month, he will be placed at an approved halfway house to help his transition with "ready access" to treatment providers, (Gov't's Opp'n at 26), who will assist alongside the probation office to establish a mental health release plan for Mr. James.  ([Doc. No. 69] at 2.)  The Court further finds that no other compelling circumstances support his request for a reduction in sentence.  In light of this finding, the Court need not reach the parties' remaining arguments or assess the other factors set forth in § 3582(c)(1)(A).

Accordingly, for all of the reasons stated above, Defendant's Motions for Release are denied.

### III.   ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motions for Release [Doc. Nos. 64, 65, 76] are **DENIED**.

Dated:   July 1, 2020                                                  s/Susan Richard Nelson
                                                                                         SUSAN RICHARD NELSON
                                                                                         United States District Judge